**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 17, 2025**

# In the Court of Appeals of Georgia

A25A0778. STEVENS et al. v. WELCH et al.

DOYLE, Presiding Judge.

In this premises liability action, plaintiffs Bobby Ray Stevens (individually and as a surviving spouse) and Kelli Mayfield (as executor of the estate of Olivia Stevens, collectively "the Stevenses") appeal from the grant of summary judgment to defendants John Welch, Jr., d/b/a John's Gun and Pawn, and Faron Welch (collectively, "Welch").[1] In four related enumerations of error, the Stevenses contend that the trial court erred by granting summary judgment based on the prior traversal rule applicable to open and obvious static hazards. Finding no error, we affirm.

---

[1] The complaint originally named John Welch, Jr., and a John Doe, but it was amended to add Faron Welch.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

Further, "[a]lthough summary judgment generally is not appropriate in routine negligence and premises liability cases, where the evidence is plain, palpable and undisputable, summary judgment is warranted."[3]

So viewed, the record shows that in 2021, the Stevenses were driving home from a flea market, and Bobby decided to inquire about purchasing firewood from John's Gun and Pawn ("the Store"),[4] which had advertised firewood for sale along the side of Highway 441 in Clayton County, Georgia. To access the Store, visitors turned off of the highway onto an unpaved driveway leading across a single-lane

---

[2] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[3] (Punctuation omitted.) *Meadows v. Dollar Gen. Store*, 371 Ga. App. 695, 696 (902 SE2d 682) (2024).

[4] John Welch ran the Store, which was located on property owned by Faron Welch.

earthen bridge over a culvert conveying a creek several feet below the surface of the driveway.[5] In front of the Store was a gravel parking area located immediately past the bridge. On this occasion, Bobby entered the driveway and drove across the bridge without incident. He got out of his vehicle, a Jeep Wrangler, and approached the Store "to see if [he] could purchase the wood." The Store was closed, so he "got back in [his] vehicle and left," driving out across the bridge the same way he came in.

On another day "[a] little later," Bobby and his wife were returning from a trip to a local farmer's market, and he noticed the wood advertisment again and decided to see if he could purchase some. He again turned onto the gravel driveway and proceeded across the bridge. At some point either on the bridge or shortly after it, Bobby paused to look at the wood piled outside the Store. As he proceeded to pull forward, his right front tire dropped over the edge of the drop-off above the creek. His vehicle fell into the creek, and it came to rest upside down. He was injured, and his wife was killed.

The Stevenses filed this action against Welch seeking damages for Bobby's injuries and the wrongful death of Olivia. They alleged, in part, that Welch was

---

[5] Faron Welch, a grading contractor, built the driveway and bridge when they built the Store in approximately 2004 or 2005.

negligent in keeping the premises safe by failing to erect a guard rail or warning markers along the drop-off. Welch answered and moved for summary judgment following discovery. After a hearing, the trial court granted the motion on the ground that Bobby had successfully traveled over the bridge before, the drop-off was an open and obvious static condition, and Bobby had equal knowledge of the hazard of driving over it. The Stevenses now appeal.

The Stevenses argue that the trial court erred by holding that he had equal knowledge of the drop-off such that he could not succeed in his premises liability claim. Specifically, they argue that (a) the trial court misconstrued Bobby's testimony; (b) the evidence did not show that Bobby had actually observed the specific hazard presented by the drop-off; (c) the hazardous nature of the drop-off was not open and obvious; and (d) the drop-off was not a static condition in light of changes in the ground cover, leaves, and foliage. We disagree.

> Under OCGA § 51-3-1, a person who owns or occupies land and by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe. In order to recover on a premises liability claim, a plaintiff must show (1) that the defendant had actual or

constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. Accordingly, the fundamental basis for an owner or occupier's liability is that party's superior knowledge of the hazard encountered by the plaintiff. In other words, *a plaintiff is not entitled to recovery if the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant.*[6]

According to Bobby's undisputed deposition testimony, he had visited the Store on a prior occasion, and the accident occurred during a similar visit "a little later" after that visit. Bobby deposed that he did not have any trouble navigating the driveway, bridge, or parking area on his first visit, and he could not recall anything dangerous about the bridge or driveway that day. He further testified that he was not aware of any changes in the condition of the bridge and driveway between the two visits, testifying, "to me it looked the same." Bobby made no allegation of poor weather or darkness hindering his visibility at the relevant times, and photos of his inverted vehicle sitting in the creek on the day of the accident show that the drop-off into the creek is clearly visible with no tall grass or other vegetation concealing its

---

[6] (Punctuation omitted; emphasis supplied.) *Gervin v. The Retail Prop. Trust*, 354 Ga. App. 11, 12-13 (1) (840 SE2d 101) (2020).

existence. Bobby's testimony did not dispute this depiction, and he described the unpaved driving surface as "very smooth across where I was going."

Based on these plain, palpable, and undisputed facts,[7] the trial court correctly held that the Stevenses cannot meet their burden to prove that the Welch defendants had superior knowledge of the hazard presented by the drop-off into the creek.[8]

> Georgia's longstanding prior traversal rule provides that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have equal knowledge of it and cannot recover for a subsequent injury resulting therefrom. The rule imputing knowledge of a danger to a person who has successfully negotiated an alleged dangerous condition before applies only to cases involving a static condition that is readily discernible to a person exercising reasonable care for his own safety. It is a plaintiff's knowledge of the specific hazard that determines whether the plaintiff can prevail on a premises liability claim.[9]

---

[7] Cf. *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997) ("The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable.") (punctuation omitted).

[8] See *Gervin*, 354 Ga. App. at 13 (1) ("[A] plaintiff is not entitled to recovery if the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant.").

[9] (Punctuation omitted.) *Meadows*, 371 Ga. App. at 699 (1). See also *Rentz v. Prince of Albany, Inc.*, 340 Ga. App. 388, 390 (1) (797 SE2d 254) (2017).

"If nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will realize any associated risks."[10]

Before the accident, Bobby had on a prior occasion safely driven down the driveway, across the bridge, into the parking area, and turned around, driving back out the same way. The bridge was unchanged between the visits, and nothing concealed the hazardous nature of the drop-off. Thus, the undisputed evidence shows that Bobby had equal knowledge of the danger, which was an open and obvious static condition, because he had encountered the drop-off while driving over the bridge twice during his first visit.

This rule applies despite Bobby's specific arguments on appeal. He relies on his deposition testimony that was sometimes vague about whether his tire dipped off the road surface after he had fully crossed the bridge or while he was still on it.[11] For example, he was confused by the photos of where the Jeep came to rest and said they

---

[10] (Emphasis omitted.) *Crebs v. Bass Pro Outdoor World*, 360 Ga. App. 121, 123 (860 SE2d 802) (2021), quoting *McLemore v. Genuine Parts Co.*, 313 Ga. App. 641, 643 (722 SE2d 366) (2012), and citing *Ridley v. Dolgencorp*, 353 Ga. App. 561, 563 (839 SE2d 26) (2020).

[11] Bobby, who was an active 84-year-old in good health, deposed facts showing that he was in and out of consciousness until first responders arrived.

described a "different story" compared to his memory. But even when construed in his favor, Bobby's testimony shows that he was on notice of the hazard of driving into the creek, which was an open and obvious hazard as depicted in the photos and unrefuted by Bobby's testimony. Thus, Bobby's descriptions of the accident fail to give rise to a triable issue with respect to his safe prior traversal of the bridge and parking area.

For the same reason, although Bobby argues that he had not encountered the specific hazard that sent him into the creek, the undisputed record fails to show any material change in the terrain between his two trips to the Store. Bobby did not testify as to any material difference in the drop-off's appearance or presentation, and he necessarily traveled the same route along the driveway and bridge on each trip. Although the complaint alleged that there were leaves and debris concealing the edge of the drop-off, the Stevenses had a burden to present evidence of this,[12] which they did not do in light of unchallenged photos of the scene depicting a clearly discernable

---

[12] See *Ingles Markets, Inc. v. Rhodes*, 340 Ga. App. 769 (798 SE2d 340) (2017) ("On summary judgment, the defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the *lack of evidence*. If the defendant does so, the plaintiff cannot rest on [his] pleadings, but must point to specific evidence that gives rise to a triable issue of fact.") (punctuation omitted; emphasis supplied).

driving surface and its edge.[13] Finally, with respect to any potential distractions presented by the firewood he came to buy, Bobby previously had seen the firewood on display at the Store, it did not block his view of the bridge and driveway, and it was not of a such a nature as to relieve Bobby of his ordinary duty of care.[14]

Based on the record before us, the trial court correctly applied the prior traversal rule and granted summary judgment to Welch.

*Judgment affirmed. Markle and Padgett, JJ., concur.*

---

[13] As noted above, Bobby's deposition testimony did not dispute this appearance as depicted in the photos taken on the day of the accident. The photos do not show any obstructions to the view of the bridge and drop-off.

[14] See *Ridley*, 353 Ga. App. at 565 ("Under the distraction theory, a merchandise display must be of such a nature that its presence would not have been anticipated by the plaintiff invitee."), citing *Robinson*, 268 Ga. at 744, 744 (2) (a) (acknowledging that "[l]ooking at displayed merchandise or a store's aisle signage has been repeatedly found to constitute a self-induced distraction"); *Long John Silver's, Inc. v. Coleman*, 223 Ga. App. 864, 865-866 (479 SE2d 141) (1996) (holding that a restaurant's window sign was a self-induced distraction because the plaintiff chose to read the sign while walking).