22691.  JOHNSON, administratrix, *v.* LIPSCOMB-WEYMAN-CHAPMAN COMPANY.

DECIDED MAY 3, 1933.

*William Walker Cowles,* for plaintiff.

*Alston, Alston, Foster & Moise,* for defendant.

SUTTON, J.  W. S. Johnson was an agent in the lease department of Lipscomb-Weyman-Chapman Company, a real-estate and renting agency, receiving a commission of 60 per cent. of all commissions accruing to the company from rentals where the lease was effected by him.  He worked in this capacity from December 9, 1929, until December 24, 1929, when he contracted pneumonia, and died on January 1, 1930.  Johnson's duties consisted in securing tenants for properties not listed with the company, where he could interest both the owner of such property and the prospective lessee.  The company's usual commission where it would act as renting agent was 5 per cent. of the total amount of rent paid by the lessee.  About November 5, 1929, Johnson learned from Stephens, an official of S. H. Kress & Company, that Kress was desirous of opening a retail store in a certain locality in Atlanta.  Johnson looked around for the purpose of securing available property satisfactory to Kress.  After several days searching, Johnson learned of certain property on which the Universal Garage had a lease, which would expire on June 1, 1930, the owner of the property being Brenau College at Gainesville.  Johnson communicated with Dr. Pearce of the college, and informed him that he had a prospective tenant for the property.  Dr. Pearce came to Atlanta, and he, Johnson, and Stephens met and discussed the question of Kress's leasing said property.  Thereafter Johnson had two more conferences with Dr. Pearce and with Rudolph, an official of the college.  At these conferences the value and cost of the building Kress proposed to erect

on the premises and the terms of the proposed lease were discussed. Stephens was acting as agent of Kress in the transactions and was interested in leasing this property for thirty years and erecting a building thereon. Johnson informed his employer of the pending negotiations, that the college owned this property, that Kress was desirous of leasing it, that the college was anxious to lease the property to Kress, and that both the lessee and the lessor were ready, willing, and able to enter into the lease. With the facts and information furnished the employer by Johnson, it consummated the lease between the college and Kress on March 27, 1931, the same being for thirty years. The rent to be paid by Kress under the lease was $275 per month for the first ten years, $325 per month for the next ten years, and $375 per month for the last ten years. The employer is receiving 5 per cent. of the monthly rental payments for closing the lease and acting as rental agent for the lessor.

After Johnson's death, his widow, as his administratrix, demanded of the real-estate company 60 per cent. of the sums it would collect as commissions during the life of the lease, which was $3,510. The company refused to pay this sum to her, and she, as such administratrix, filed suit against it, setting up the facts narrated above. In her petition she further alleged that the defendant was liable to the estate of her intestate for 60 per cent. of the 5 per cent. which it would receive as commissions for acting as renting agent and for closing the lease, which amount was $3,510. She further alleged that at the time of the death of her intestate, he had created the desire between the lessor and lessee to enter into the lease, but that execution thereof was delayed until March 27, 1931, for reasons unknown to her, that her intestate was the procuring cause of the lease, that he had taken the agent of the lessor out to see the property and pointed out to him the advantages to be derived from locating the store thereon, and that after seeing the same this agent became impressed, and requested Johnson to proceed to ascertain if the property was available for a long lease, which Johnson did. She further set up that in pursuance of the information furnished the defendant by her intestate, the defendant was enabled to and did prosecute to a conclusion the negotiations begun by him, that the defendant accepted and profited by the services of her intestate, that only his death prevented him from closing the transaction, and she is entitled to recover on a quantum meruit for the services per-

formed by him, and that his services in this regard were reasonably worth the sum sued for. She further alleged that the efforts and labors of her intestate in bringing the parties together constituted and was the initiative step towards effecting and closing the lease, that these labors rendered by him were valuable services and were accepted by the defendant, and were the direct and efficient cause of the offer by Kress and the acceptance by the lessor. She further set up that the lease provides that all rents paid thereunder shall be paid to the defendant, and that the defendant has received since the execution of the lease, and is now receiving, all commissions for collecting such rentals. The petition was filed on November 16, 1931, after the lease had been in effect about eight months.

The defendant demurred to the petition generally and upon various special grounds. The court, on March 8, 1932, sustained the special demurrers as to certain paragraphs of the petition, with leave to the plaintiff to amend. The general demurrer was not passed upon. The plaintiff did not except to this order, but by amendment struck some paragraphs of the petition and inserted substitutes in lieu thereof, more fully setting forth the nature of the claim against the defendant, and by adding to other paragraphs of the petition.

To this amended petition the defendant demurred, both generally and specially. The court on May 14, 1932, sustained the special demurrer of the defendant, holding that the petition should be amended by setting forth more specifically the work claimed to have been done by the plaintiff and the reasonable value, it being necessary to make these allegations as the suit is on a quantum meruit; that it is not enough to allege that the deceased interested a party in the subject-matter of the alleged lease, but it is necessary to allege what was done in so interesting the party, that in pursuance of that interest the defendant itself prosecuted to a conclusion the negotiations thus begun, that the defendant has collected rents under such contract and profited thereby, and that the services actually rendered by the deceased were of a specified reasonable value to the defendant. The order further provided that the plaintiff have certain designated time in which to amend the petition as required in the order, in default of which the petition should stand dismissed. The plaintiff did not except, but again amended her petition, and the petition as thus amended makes substantially the case hereinabove set forth. The defendant renewed its demurrers to the peti-

tion as amended, charging that the amendment failed to meet the requirements of the court's order of May 14, 1932. The court thereupon, on July 2, 1932, passed an order to the effect that the amendment did not meet with the requirements of the order of May 14, 1932, holding that before the plaintiff could recover on a quantum meruit it must be alleged that the deceased rendered valuable services to the defendant which resulted in the execution of the contract by which the defendant received commissions from rents collected by it, that the plaintiff has not so alleged, and that, construing the petition most strongly against the plaintiff, it appears that the defendant never had a contract by which it was entitled to receive commissions from the rentals of the property and never collected any rents, and thereupon dismissed the petition as not setting forth a cause of action against the defendant. To this judgment the plaintiff excepted.

Ordinarily, when one renders services valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof. Civil Code (1910), § 5513. An action brought to recover for the reasonable value of services rendered another, which the latter accepts, is an action upon a quantum meruit. *Hudson* v. *Hudson*, 90 *Ga.* 581 (16 S. E. 349). If an agent is the procuring cause of the transaction, he is entitled to compensation for effecting it, where the principal closes the transaction itself. *Hardin* v. *Stansel*, 13 *Ga. App.* 22 (78 S. E. 681) ; *Case Threshing Machine Co.* v. *Binns*, 23 *Ga. App.* 46 (3) (97 S. E. 443). An agent employed by a real-estate renting agency to procure rental agreements between lessors and lessees for the renting agency, for a stipulated percentage of the commissions which the agency receives for collecting the rents paid by the lessees under such leases, is ordinarily entitled to such compensation if he brings his principal and third persons, who are, through his efforts, willing to enter into a lease as to certain property, into communication with the renting agency, and as a result thereof said parties, through the renting agency, close the transaction by executing the lease and the renting agency obtains the handling of the rentals accruing under the lease. See 2 C. J. 775; *Gresham* v. *Connally*, 114 *Ga.* 906 (41 S. E. 42) ; *Payne* v. *Ponder*, 139 *Ga.* 283 (77 S. E. 32) ; *Ford* v. *Thomason*, 11 *Ga. App.* 359, 360 (75 S. E. 269) ; Civil Code (1910), § 3587. From the petition as amended the last time, the case seems to be one where

the plaintiff's intestate was such an agent of the defendant, and that his services up to the time of his sickness and death were accepted by the defendant, were valuable, were the procuring and efficient cause of the lease, and that the defendant received benefit as a result of such services. It is our opinion that the plaintiff sufficiently met the objections raised by the defendant's last demurrer and pointed out in the court's order of May 14, 1932, sustaining the demurrer with leave to amend.

This case is not based upon an express contract, and plaintiff's intestate rendered valuable services in negotiating the lease, which were accepted by the defendant and were the procuring cause of the lease. The plaintiff's action on the quantum meruit was not necessarily defeated by the fact that the lease was finally closed by the defendant, but it is enough for a recovery if the services of the plaintiff's intestate were the efficient cause. *Collier* v. *Holland,* 24 *Ga. App.* 251 (100 S. E. 654) ; *Wilcox* v. *Wilcox,* 31 *Ga. App.* 486 (2) (119 S. E. 445). The fact that the plaintiff set up the agreement between her intestate and the defendant as to the amount of compensation he should receive for negotiating and closing the lease in question does not show that the suit was upon the contract, but the jury could consider the amount of compensation agreed to be paid for closing the lease with the amount of services actually performed by the plaintiff's intestate in connection with the lease in determining what was the reasonable value of such services. What was the reasonable value of such services is a question for the jury to determine under the evidence adduced upon the trial. *Marshall* v. *Bahnsen,* 1 *Ga. App.* 485 (57 S. E. 1006) ; *Daniell* v. *McRee,* 31 *Ga. App.* 210 (120 S. E. 448). The fact alone that the sickness and death of the agent prevented him from effecting the close of the lease would not prevent a recovery by his administratrix on a quantum meruit for the services actually performed by him, where such services were the procuring and efficient cause of the lease, and were accepted by the defendant, and the defendant received benefit therefrom. See 2 C. J. 760, § 426, and cases cited in notes 10 and 11.

It follows that the petition as amended made a case for the jury to pass upon, and that the court erred in sustaining the demurrers, both general and special, and in dismissing the petition.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*